IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CORA DIXON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. CIV-23-50-SM |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of Social** | ) |
| **Security,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION & ORDER

Cora Dixon (Plaintiff) seeks judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties consented to disposition by a Magistrate Judge under 28 U.S.C. § 636(c). Docs. 10, 11.[1] The Court reverses the Commissioner's decision and remands the case for further proceedings because the Administrative Law Judge (ALJ) did not evaluate Dr. Peter Ciali, Ph.D.'s medical opinion according to the factors in 20 C.F.R. § 404.1520c.

---

[1] Citations to the parties' pleadings will refer to this Court's CM/ECF pagination. Citations to the Administrative Record (AR) will refer to its original pagination.

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

2

### C. Relevant findings.

#### 1. Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 19-33; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity since July 16, 2020, the alleged onset date;

(2) had the severe medically determinable impairments of degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, atrial fibrillation, diabetes mellitus, neuropathy, and obesity;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the residual functional capacity[2] to perform sedentary work except that she can occasionally climb stairs and ramps; can never climb ladders or scaffolds; can occasionally stoop, kneel, crouch, and crawl; can have occasional exposure to hazards such as unprotected heights and moving mechanical parts; and needs to use a cane when ambulating;

(5) was able to perform her past relevant work as a billing clerk; and so,

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

(6) had not been under a disability from July 16, 2020, through August 31, 2022.

*See* AR 20-33.

### 2. Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1-5, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks omitted)). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052.

This Court "consider[s] whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.*

"[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

### B. The ALJ erred by failing to articulate her assessment of Dr. Ciali's medical opinion according to the factors in 20 C.F.R. § 404.1520c.

Plaintiff claims the ALJ erred by failing to articulate her assessment of Dr. Peter Ciali, Ph.D.'s, medical opinion according to the factors in 20 C.F.R. § 404.1520c. Doc. 12, at 6-9. The Court agrees.

### 1. Dr. Ciali's evaluation and the ALJ's findings.

Dr. Ciali diagnosed Plaintiff with recurrent, moderate major depressive disorder; generalized anxiety disorder; and unspecified neurocognitive disorder. AR 531. He found, though, that her "prognosis for improvement is fair with treatment." *Id*. He opined that Plaintiff "is capable to independently manage her financial affairs in her own best interest" but that her "ability to perform work related mental activities including remembering information, understanding instructions, and maintaining sustained concentration are mildly to moderately impaired." *Id*.

Dr. Ciali arrived at these findings after administering "The Montreal Cognitive Assessment (MoCA)-BLIND," which is a "rapid screening instrument for mild cognitive dysfunction that can be used for remote evaluation." *Id*. at 530. The test, on which Plaintiff scored 12 out of 22, "assesses different cognitive domains: attention and concentration, memory, language, conceptual thinking, calculations, and orientation." *Id*. Dr. Ciali also administered the Patient Health Questionnaire. *Id*. at 530. As characterized by the ALJ, her score "indicates moderate depressive symptoms." *Id*. at 21. Dr. Ciali also administered the Generalized Anxiety Disorder Questionnaire. *Id*.

at 530. The ALJ characterized her score as "indicat[ing] severe anxiety." *Id.* at 21.

Noting these tests, the ALJ found Plaintiff had no more than mild limitations in each of the four broad areas of mental functioning comprising the "paragraph B criteria," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A), the ability to "understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." AR 22-23.

### 2. Dr. Ciali's evaluation constitutes a medical opinion.

Under 20 C.F.R. § 404.1513(a)(2), "[a] medical opinion is a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [she] ha[s] one or more impairment-related limitations or restrictions in . . . [the] mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; [and] carrying out instructions," among others. By contrast, "other medical evidence" "includ[es] judgments about the nature and severity of [a claimant's] impairments, [a claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3).

7

The Commissioner argues Dr. Ciali's evaluation did not constitute a "medical opinion" subject to the requirements of 20 C.F.R. § 404.1520c, but rather "other medical evidence." Doc. 14, at 4-8. She cites for support *Roy ex rel. Helton v. Comm'r*, which held that a physician's evaluation that the claimant's tremor "worsens when [s]he holds [her] arms outstretched and is especially exacerbated by performing a task such as drawing a spiral, straight line and handwriting" did not qualify as a medical opinion because it did "not provide any particular manipulative limitations or address what [the claimant] could still do despite her essential tremor." 2022 WL 17726702, at *3 (10th Cir. Dec. 16, 2022). Instead, that evaluation consisted of "simply clinical observations regarding the nature and severity of her essential tremor." *Id*. That case is not applicable here. Dr. Ciali's evaluation moved beyond clinical observations to find mild-to-moderate restrictions in the mental demands of specific work activities—"remembering information, understanding instructions, and maintaining sustained concentration." AR 531; *cf. M.H. v. Kijakazi*, 2023 WL 2401063, at *5 (D. Colo. Mar. 8, 2023) (Evaluation did not constitute a medical opinion because "the limitations [were] not explicitly related to the 'ability to perform physical demands of work activities.'").

8

Dr. Ciali's conclusion that Plaintiff's "ability to perform work related mental activities including remembering information, understanding instructions, and maintaining sustained concentration are mildly to moderately impaired," AR 531, constituted a medical opinion under § 404.1513(a)(2).

### 3. The ALJ's failure to articulate the persuasiveness of Dr. Ciali's medical opinion according to the § 404.1520c factors was not harmless.

The Commissioner argues that, even assuming Dr. Ciali's findings constituted a medical opinion, the ALJ's failure to properly consider them was nevertheless harmless. Doc. 14, at 7.

Under § 404.1520c, the ALJ "will articulate" how persuasive she finds "all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 404.1520c(b). This persuasiveness finding is based on the enumerated factors, the most important of which are supportability and consistency, and an ALJ "will explain how [she] considered the supportability and consistency factors for a medical source's medical opinions . . . in [a claimant's] determination or decision." *Id.* § 404.1520c(b)(2). Supportability means the degree of "relevan[ce of] the objective medical evidence and supporting explanations presented by a medical source" to his

9

medical opinion. *Id.* § 404.1520c(c)(1). Consistency means the degree of corroboration "with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2).

The ALJ's failure to consider the supportability and consistency of Dr. Ciali's opinion may be harmless if "based on material that ALJ did at least consider (just not properly), [this Court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *see also Jacobs v. Kijakazi*, No. CIV-22-826-STE, 2023 WL 4144490, at *5 (W.D. Okla. June 22, 2023) (citing *Allen* and rejecting Commissioner's argument that failure to consider § 404.1520c factors was nevertheless harmless).

The Commissioner suggests that any error was harmless because the ALJ's finding of mild limitations in each of the four broad areas of mental "paragraph B" criteria was within Dr. Ciali's range of mild-to-moderate impairment. Doc. 14, at 8; AR 531. This leaves open the question of whether

the correct analysis could have reasonably led to a finding of moderate impairment, at the other end of Dr. Ciali's range.[3]

The Commissioner also argues the evidence the ALJ relied on to find no more than mild limitations indicates what her supportability and consistency findings would be, had she articulated them. Doc. 14, at 7-8.

True, the ALJ discounted Plaintiff's consistency because she had received "no behavioral health treatment," AR 31, made no "regular complaints of depressive or anxiety symptoms," *id.* at 21, and "consistent[ly] scor[ed] in the negative or mild range on the patient health questionnaire." *Id.* But the ALJ relied heavily on Plaintiff's activities of daily living for this consistency determination. *Id.* at 21-23. Specifically, ALJ noted Plaintiff's reports that "she could prepare meals, perform household chores, shop in stores, manage personal finances, drive a car, and make jewelry." *Id.* at 22. As an initial matter, Plaintiff's "minimal activities" of daily living do not necessarily amount to substantial evidence refuting her accounts that she has anxiety when alone in stores or restaurants or that she handles stress "not well at all" due to its

---

[3] Whether Plaintiff suffered from mild or moderate impairments is especially germane to the ALJ's Step-Four determination that Plaintiff could perform her prior work as a bookkeeper, which has a "specific vocational preparation level" of four (semi-skilled). Dictionary of Occupational Titles, DICOT 214.362-014, 1991 WL 671870 (Documentation-Billing Clerk).

11

effects on her blood pressure. *Id.* at 267, 270; *Murray v. Berryhill*, No. CIV-15-364-CG, 2017 WL 4010868, at *4 (W.D. Okla. Sept. 12, 2017) (finding "the minimal activities cited by the ALJ," including weekly shopping trips and trips to the grocery store and post office, "d[id] not constitute substantial evidence refuting Plaintiff's claims of difficulty functioning outside of his home"). And even if these findings do amount to a consistency determination, the ALJ omitted any supportability analysis.

The Commissioner points to the ALJ's critiques of the Montreal Assessment as an indication that she would have found Dr. Ciali's medical opinion unsupported by the record. Doc. 14, at 7 ("The ALJ also considered in detail the examination findings from Dr. Ciali's report and explained why she did not find some scores in it persuasive."). That critique, though, leaves out other tests in Dr. Ciali's evaluation—the Patient Health Questionnaire, which as the ALJ acknowledged, "indicate[d] moderate depressive symptoms," and the Generalized Anxiety Disorder Questionnaire, which as the ALJ acknowledged "indicate[d] severe anxiety." AR 21, 530. This evidence of greater impairments, and the moderate severity encompassed by Dr. Ciali's medical opinion, means the ALJ's omission was not harmless. *Cf. Jeffrey J. v. Kijakazi*, 2022 WL 3139228, at *3 (D. Utah Aug. 5, 2022) (ALJ's "failure to

evaluate a medical opinion" was harmless where he "fully discussed [p]laintiff's mental health treatment," which revealed he "was pleasant, smiling, and appearing euthymic; his thoughts were logical, linear, and goal directed; he demonstrated adequate concentration; he displayed intact memory and good judgment; and he responded well to medication," consistent with the state agency psychological consultants' opinion—found to be persuasive—that plaintiff only had mild limitations.).

On remand, the ALJ should articulate supportability and consistency findings for Dr. Ciali's medical opinion under § 404.1520c. The Court does not reach Plaintiff's other claims of error because "they may be affected by the ALJ's treatment of this case on remand." *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### III. Conclusion.

The Commissioner's decision is reversed.

**ENTERED** this 30th day of June, 2023.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE